BERNSTEIN LITOWITZ BERGER
   &amp; GROSSMANN LLP
DAVID R. STICKNEY (Bar No. 188574)
(davids@blbglaw.com)
DAVID R. KAPLAN (Bar No. 230144)
(davidk@blbglaw.com)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323

      -and-

AVI JOSEFSON
(avi@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10019
Tel:    (212) 554-1400
Fax:   (212) 554-1444

*Attorneys for Plaintiff Louisiana Sheriffs'
Pension & Relief Fund*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LOUISIANA SHERIFFS' PENSION & RELIEF FUND, on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>            v.<br><br>INTEL CORPORATION, BRIAN M. KRZANICH, ROBERT H. SWAN, and NAVIN SHENOY,<br><br>            Defendants. | Case No.<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Plaintiff Louisiana Sheriffs' Pension & Relief Fund ("Plaintiff"), by and through its counsel, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, counsel's investigation, which includes review and analysis of: (a) regulatory filings made by Intel Corporation ("Intel" or the "Company") with the United States Securities and Exchange Commission ("SEC"); (b) press releases and media reports issued by and disseminated by the Company; (c) analyst and media reports concerning Intel; and (d) other public information regarding the Company.

## I. INTRODUCTION

1. This federal securities class action is brought on behalf of purchasers of Intel stock between October 27, 2017 and January 4, 2018, inclusive (the "Class Period"). The claims asserted herein are alleged against Intel and certain of the Company's senior executives (collectively, "Defendants"), and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2. Intel is one of the world's largest manufacturers of computer processors and related components. This matter arises from Defendants' misrepresentations regarding the security and performance of Intel's processors. Throughout the Class Period, Defendants falsely told investors that the Company's chips were secure and outperformed its competitors' products. In truth, Intel's chips were subject to major security vulnerabilities that allowed hackers to access users' most sensitive personal information, and fixing the flaws will significantly impair the chips' performance.

3. On January 2, 2018, during aftermarket hours, a British technology website reported that virtually all of Intel's chips are flawed in that they allow computer programs to access a computer's kernel memory. A computer's kernel memory has unfettered access to data on a computer, including users' passwords, emails, and financial information. This renders Intel chips vulnerable to hackers and other malware. What's more, remedying the defect will decrease the processors' performance by up to 30%. This defect came to be known as "Meltdown."

4. The next day, on January 3, 2018, Google researchers announced that Intel chips

suffered from another defect—now known as "Spectre"—that also allows hackers to gain access to a users' personal information. According to an article published by *Reuters* on January 3, 2018, Google researchers alerted Intel to the Spectre flaw on June 1, 2017 and reported the Meltdown flaw soon thereafter. On this news, the price of Intel stock declined from $46.85 per share on January 2, 2018, to $45.26 per share on January 3, 2018, or approximately 3%.

5. Then, on January 4, 2018, several news outlets reported that Intel Chief Executive Officer ("CEO"), Defendant Brian Krzanich, sold roughly $39 million worth of his personal holdings of Intel stock, the maximum amount he was allowed to sell under the Company's bylaws. Defendant Krzanich sold this stock after Intel was informed of the vulnerabilities in its semiconductors, but before the issues were publicly disclosed. On this news, the price of Intel stock declined from $45.26 per share on January 3, 2018, to $44.43 per share on January 4, 2018, or 2%.

6. Federal lawmakers have since wrote a letter to the SEC and the Department of Justice urging them to investigate Intel's CEO's "alarming" and "troubling" insider sales. The United States House of Representatives is also investigating Intel's "troublesome" concealment of the security flaws and "glaring warning signs that we must take cybersecurity more seriously."

## II.   JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Intel maintains its corporate headquarters in Santa Clara, California, which is situated in this District, conducts substantial business in this District, and many of the acts and conduct that constitute the violations of law complained of herein, including the preparation and dissemination to the public of materially false and misleading information, occurred in this District. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the

mails, interstate telephone communications, and the facilities of the national securities markets.

## III. PARTIES

9. Plaintiff Louisiana Sheriffs' Pension & Relief Fund is a multi-employer, defined benefit, governmental retirement plan providing retirement, disability and death benefits to approximately 25,000 active and retired employees of the sheriff's offices in all 64 Louisiana parishes. As of June 30, 2016, Plaintiff managed roughly $3 billion in assets. Plaintiff purchased shares of Intel stock on the NASDAQ Stock Market ("NASDAQ") during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

10. Defendant Intel is a multinational technology company. Incorporated in Delaware, the Company maintains its corporate headquarters at 2200 Mission College Boulevard, Santa Clara, California 95054-1549. Intel stock trades on NASDAQ, which is an efficient market, under ticker symbol "INTC." As of September 30, 2017, Intel had 4.68 billion shares of stock outstanding, owned by at least hundreds or thousands of investors.

11. Defendant Brian M. Krzanich ("Krzanich") is, and was at all relevant times, CEO of Intel as well as a member of the Company's Board of Directors.

12. Defendant Robert H. Swan ("Swan") is, and was at all relevant times, Intel's Executive Vice President, Chief Financial Officer.

13. Defendant Navin Shenoy ("Shenoy") is, and was at all relevant times, Intel's Executive Vice President and General Manager of the Data Center Group.

14. Defendants Krzanich, Swan, and Shenoy are collectively referred to hereinafter as the "Individual Defendants." The Individual Defendants, because of their positions with Intel, possessed the power and authority to control the contents of Intel's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors. Each of the Individual Defendants was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and

were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## IV. BACKGROUND

15. Intel designs, manufactures, and sells computer components and related products. The Company invented the x86 series of microprocessors, which is the type of processor found in most personal computers. Intel's brands of x86 processors include Core and Xeon—some of the Company's best-selling and most well-known central processing units. Currently, approximately 90% of new personal computers and laptops contain Intel chips. Intel also has a near monopoly in the market for server chips, which are particularly lucrative for Intel, with high-end chips selling for roughly $10,000 each. In 2016, Intel achieved nearly $60 billion in revenue, the majority of which was derived from the sale of Intel chips.



16. A bedrock of the Company's sales strategy is the purported cutting-edge performance and security of Intel's products. For years, Intel has touted the performance and security of its processors to investors and consumers alike.

## V. INTEL DEFRAUDS INVESTORS

17. The Class Period starts on October 27, 2017, the first trading day after Intel reported earnings for its third quarter of 2017. Intel announced those results after the market closed on October 26, 2017. Although Defendants made fraudulent misrepresentations to investors prior to October 27, 2017 relating to the security and performance of Intel processors, investors that

purchased Intel stock prior to October 27, 2017 paid less than Intel stock was worth following the revelation of the securities fraud described herein.

18.     Specifically, on October 26, 2017, Intel issued a press release reporting record results, and stated that the Company "extended its performance leadership with the launches of 8th Gen Intel® Core™ and Intel® Xeon® Scalable processors."  On Intel's earnings conference call also held on October 26, 2017, CEO Krzanich told investors that "[o]ur focus on an annual beat rate of innovation and thoughtful segmentation, combined with an investment strategy designed to produce results even in a declining market, is paying off.  We're especially excited about the launch of our latest Eighth Generation Core processor . . . [which is] our best gaming processor to date, with up to 50% better performance than the competition on top-game titles."  Defendant Swan similarly stated that the Company's PC-centric business "continues to execute extremely well . . . Our focus of performance-leading products and a smart segmentation strategy is working."

19.     The statements and omissions set forth in ¶18 were materially false and misleading. In truth, there are fundamental design flaws in Intel chips that seriously compromise the chips' security and render them vulnerable to hacking and other exploits.  What's more, remedying the defects will significantly impair the chips' performance.  Accordingly, without the defects, Intel's Eighth Generation Core processors would not perform 50% better than competitors' products on top-game titles.

20.     On November 14, 2017, Defendant Shenoy presented at the UBS Global Technology Conference.  During that conference, Defendant Shenoy stated that the Company's "Xeon architecture [] has been in the market for over 20 years now.  It's proven.  It's very much battle tested.  It has outstanding performance on a wide range of workloads that are designed to optimize not only performance but security and agility of various workloads in the data center." Defendant Shenoy further stated on November 14, 2017 that "Xeon Scalable outperforms on throughputs kind of benchmarks by 34%, by 18% on performance per watt benchmarks and by over 50% on performance per core."

21.     The statements and omissions set forth in ¶20 were materially false and misleading. In truth, Intel's Xeon architecture was not designed to optimize security as it contained major

security flaws. Similarly, the outperformance of Intel's Xeon Scalable platform was overstated as fixing the defects will dent the processing speed of the platform.

## VI. DISCLOSURES OF COMPANY'S MISCONDUCT CAUSE SIGNIFICANT INVESTOR LOSSES

22. On January 2, 2018, after the market closed, British technology website *The Register* reported that effectively every Intel chip currently in use suffers from a major design flaw. The vulnerability—now called "Meltdown"—allows programs to access a computer's kernel memory. Kernel memory has complete access to a computer's operating system and contains highly sensitive personal information such as usernames, passwords, emails, financial data, photos, and any other data stored on a computer. Because Meltdown allows programs to access kernel memory, the personal information in kernel memory is vulnerable to exploitation through malware and other hacks. To fix the flaw, providers of major operating systems are instituting software patches to isolate the kernel memory, but these updates may handicap the performance of Intel chips by up to 30%. According to Credit Suisse analyst John Pitzer, a decrease in Intel's chip performance could lead to a sector-wide shift to Intel's competitors' chips, or cause the Company's customers to demand reduced pricing for Intel processors.

23. The next day, on January 3, 2018, a Google research team named "Project Zero" announced that Intel and several other manufacturers' chips suffered from a similar defect named "Spectre." Like Meltdown, Spectre also breaks the isolation between different applications and allows hackers to trick programs into leaking a users' confidential information. However, unlike Meltdown, Spectre makes it possible for a program to access data in a separate program, without any need to call on the operating system or kernel memory. This makes Spectre potentially more difficult to fix, as any fix would require more than simply isolating the kernel memory. According to a January 3, 2018 *Reuters* article, Google researchers alerted Intel to the Spectre flaw on June 1, 2017 and reported the Meltdown flaw soon thereafter—months before they were publicly disclosed.

24. Intel admitted that its chips suffer from these security flaws, but immediately attempted to downplay the issues, claiming that the media reports about the flaws were "wildly

1  inaccurate," that the Company's competitors' chips also suffer from the same defects, and that the performance impact of any patches to fix the flaws "will be mitigated over time."  Intel also claimed that there were no known instances of hackers actually exploiting these vulnerabilities and that its chips were working as intended.  Despite Intel's attempts to downplay the significance of the defects in its chips, the price of Intel stock declined from $46.85 per share on January 2, 2018, to $45.26 per share on January 3, 2018, or approximately 3%.

25. Then, on January 4, 2018, several news outlets reported that Defendant Krzanich sold every share of Intel stock that he was allowed to sell—almost $40 million—after Google informed Intel of the security vulnerabilities in its semiconductors but before the flaws were publicly disclosed.  On this news, the price of Intel stock declined from $45.26 per share on January 3, 2018, to $44.43 per share on January 4, 2018, or 2%.

26. Intel's assurances that the defects would not impact performance were nothing more than false promises when, on January 8, 2018, subsequent to the close of the Class Period, CEO Krzanich said the problem is more pervasive than Intel initially thought.  The next day, on January 9, 2018, Microsoft announced that its fixes for the security vulnerabilities in Intel chips may significantly slow down certain servers and dent the performance of some personal computers.

27. Also on January 9, 2018, two United States Senators urged the SEC and Justice Department to investigate Defendant Krzanich's sales given their highly suspicious nature and to "enforce our laws to the fullest extent possible."  Federal lawmakers are also probing Intel's concealment of the security vulnerabilities as well as the cause and impact of the flaws in Intel's chips.

## VII. LOSS CAUSATION

28. During the Class Period, as detailed herein, Defendants made materially false and misleading statements and omissions, and engaged in a scheme to deceive the market.  This artificially inflated the price of Intel stock and operated as a fraud or deceit on the Class (as defined below).  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Intel stock fell.  As a result of their purchases of Intel stock during the

Class Period, Plaintiff and other members of the Class suffered harm.

## VIII. CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Intel stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, directors, and officers of Intel and their families and affiliates.

30. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Intel has approximately 4.68 billion shares of stock outstanding, owned by at least hundreds or thousands of investors.

31. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    (a) Whether Defendants violated the Exchange Act;

    (b) Whether Defendants omitted and/or misrepresented material facts;

    (c) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

    (d) Whether Defendants knew or recklessly disregarded that their statements and/or omissions were false and misleading;

    (e) Whether Defendants' misconduct impacted the price of Intel stock;

    (f) Whether Defendants' conduct caused the members of the Class to sustain harm; and

    (g) The extent of harm sustained by Class members and the appropriate measure of harm.

32. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained harm from Defendants' wrongful conduct.

33. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests which conflict with those

of the Class.

34.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

IX.     **INAPPLICABILITY OF STATUTORY SAFE HARBOR**

35.     Intel's "Safe Harbor" warnings accompanying its forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

36.     Defendants are also liable for any false or misleading forward-looking statements pleaded herein because, at the time each such statement was made, the speaker knew the statement was false or misleading and the statement was authorized and/or approved by an executive officer of Intel who knew that the statement was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to, or stated to be dependent on, those historic or present tense statements when made.

X.      **PRESUMPTION OF RELIANCE**

37.     At all relevant times, the market for Intel stock was an efficient market for the following reasons, among others:

    (a)     Intel stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

    (b)     As a regulated issuer, Intel filed periodic public reports with the SEC and NASDAQ;

    (c)     Intel regularly and publicly communicated with investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

    (d)     Intel was followed by several securities analysts employed by major brokerage firm(s) who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firm(s).  Each of these reports was publicly available and entered the public marketplace.

38.   As a result of the foregoing, the market for Intel stock promptly digested current information regarding Intel from all publicly available sources and reflected such information in the price of Intel stock.  Under these circumstances, all purchasers of Intel stock during the Class Period suffered similar injury through their purchase of Intel stock at artificially inflated prices and the presumption of reliance applies.

39.   A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class' claims are grounded on Defendants' material omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the security and performance of Intel's processors—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the security and performance of Intel's processors, as set forth above, that requirement is satisfied here.

## COUNT I

**For Violation of Section 10(B) of the Exchange Act and Rule 10b-5 Against All Defendants**

40.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.   During the Class Period, Defendants carried out a plan, scheme, and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause economic harm to Plaintiff and other members of the Class.

42.   Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's stock in violation of Section

10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

43. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the Company's financial well-being, operations, and prospects.

44. During the Class Period, Defendants made the false statements specified above, which they knew or recklessly disregarded to be false or misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or recklessly disregarded the true facts that were available to them. Defendants engaged in this misconduct to conceal Intel's true condition from the investing public and to support the artificially inflated prices of the Company's stock.

46. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they purchased Intel stock and were harmed when the truth about Intel negatively impacted the price of those securities. Plaintiff and the Class would not have purchased Intel stock at the prices they paid, or at all, had they been aware of the truth about Intel.

47. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered harm in connection with their respective purchases of the Company's stock during the Class Period.

48. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT II

**For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

49. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Intel within the meaning of Section 20(a) of the Exchange Act. By virtue of their high-level positions, participation in

and/or awareness of the Company's operations, direct involvement in the day-to-day operations of the Company, and/or intimate knowledge of the Company's actual performance, and their power to control public statements about Intel, the Individual Defendants had the power and ability to control the actions of Intel and its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Awarding compensation to Plaintiff and other Class members against all Defendants, jointly and severally, for all harm sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

D. Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

## XII. JURY DEMAND

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: March 6, 2018 | Respectfully submitted, |
| | BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP |
| | */s/ David R. Stickney* <br> DAVID R. STICKNEY |
| | David R. Stickney (Bar No. 188574) <br> (davids@blbglaw.com) <br> David R. Kaplan (Bar No. 230144) <br> (davidk@blbglaw.com) <br> 12481 High Bluff Drive, Suite 300 <br> San Diego, CA 92130 <br> Tel:   (858) 793-0070 <br> Fax:   (858) 793-0323 |
| | -and- |
| | AVI JOSEFSON <br> (avi@blbglaw.com) <br> 1251 Avenue of the Americas <br> New York, NY 10020 <br> Tel:   (212) 554-1400 <br> Fax:   (212) 554-1444 |
| | *Attorneys for Plaintiff Louisiana Sheriffs' Pension & Relief Fund* |

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, Osey McGee, on behalf of Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs"), hereby certify, as to the claims asserted under the federal securities laws, that:

1. I am the Executive Director of Louisiana Sheriffs. I have reviewed the complaint with the Fund's legal counsel, and based on the legal counsel's knowledge and advice, authorize its filing.

2. Louisiana Sheriffs did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3. Louisiana Sheriffs is willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. Louisiana Sheriffs' transactions in the Intel Corporation securities that are the subject of this action are set forth in the chart attached hereto.

5. Louisiana Sheriffs has sought to serve and was appointed as a lead plaintiff and representative party on behalf of a class in the following action under the federal securities laws filed during the three-year period preceding the date of this Certification:

    *Sanchez v. Centene Corp.*, No. 17-cv-806 (E.D. Mo.)

6. Louisiana Sheriffs has sought to serve as a lead plaintiff and representative party on behalf of a class in the following actions under the federal securities laws filed during the three-year period preceding the date of this Certification, but either withdrew its motions for lead plaintiff or was not appointed lead plaintiff:

    *Washtenaw County Employees' Retirement System v. Walgreen Co.*,
    No. 15-cv-3187 (N.D. Ill.)
    *In re Eaton Corporation Securities Litigation,* No. 16-cv-5894 (S.D.N.Y.)

{00103456.DOC;1}

7. Louisiana Sheriffs will not accept any payment for serving as a representative party on behalf of the Class beyond Louisiana Sheriffs' pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, as ordered or approved by the Court.

Louisiana Sheriffs has relied on the research and analysis of the complaint provided by legal counsel Bernstein Litowitz Berger & Grossmann LLP and review with the Fund's general counsel. The undersigned declares that the statements made and information provided are true and correct to the best of his knowledge and belief,.

Executed this 6th day of March, 2018.

_____
Osey McGee
Executive Director
*Louisiana Sheriffs' Pension & Relief Fund*

{00103456.DOC;1}

**Louisiana Sheriffs' Pension & Relief Fund**
**Transactions in Intel Corporation**

| Transaction | Date | Shares | Price |
|---|---|---|---|
| Purchase | 11/10/2017 | 18,973 | 45.6095 |
| Purchase | 11/10/2017 | 11,747 | 45.6541 |
| Purchase | 11/13/2017 | 30,572 | 45.7432 |
| Sale | 11/28/2017 | (8,350) | 44.5221 |
| Sale | 11/28/2017 | (8,105) | 44.5082 |
| Sale | 11/28/2017 | (12,792) | 44.5255 |